DOWNING & Co. (INC.) *v.* UNITED STATES (No. 2443).[1]

1. CONSTRUCTION, DOUBT FAVORS IMPORTER.
   If a tariff provision is open to two constructions, the one more favorable to the importer is accepted.

---

[1] T. D. 40614.

2. CONSTRUCTION, PARAGRAPH 1309, TARIFF ACT OF 1922—"HANGING PAPER."
    Paragraph 1309, tariff act of 1922, provides for "hanging paper," whereas
    former tariff acts provided for "paper hangings." Hanging paper commonly
    and ordinarily means either paper for hanging or hangings or paper which
    hangs. Hangings originally meant tapestries, velvets, leathers, and cloth
    hung loosely on walls as decorations. Subsequently wall papers were pro-
    duced to imitate such decorations and acquired the name of *paper* hangings
    to distinguish them. "Paper hangings" means tinted or decorative paper
    used for covering walls, ceilings, etc. "Hanging paper" means such paper
    whether or not tinted or decorative.

3. GRASS CLOTH—"HANGING PAPER."
    Merchandise known as grass cloth, made by pasting a fabric of weed bark
    sewed with cotton thread upon a paper backing and dyeing the surface, im-
    ported to be used as wall hangings, is dutiable as dyed hanging paper under
    paragraph 1309, tariff act of 1922, and not as manufactures in chief value of
    vegetable fiber other than cotton, under paragraph 1021.

United States Court of Customs Appeals, January 3, 1925

APPEAL from Board of United States General Appraisers, Abstract 47452

[Reversed.]

*Allan R. Brown* for appellant.
*William W. Hoppin,* Assistant Attorney General (*Oscar Iastaedter,* special
attorney, of counsel), for the United States.

[Oral argument Nov. 11, 1924, by Mr. Brown and Mr. Hoppin]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD,
Associate Judges

SMITH, Judge, delivered the opinion of the court:

Rolls of grass cloth imported at the port of New York were classi-
fied by the collector of customs as paper hangings composed of vege-
table fiber and assessed for duty at 40 per cent ad valorem under
that part of paragraph 1021 of the tariff act of 1922, which reads as
follows:

PAR. 1021. * * * manufactures of vegetable fiber other than cotton, or
of which such fibers or any of them is the component material of chief value, not
specially provided for, 40 per cent ad valorem.

The importer protested that the merchandise was dutiable either
at 10 per cent ad valorem or at 1½ cents per pound, plus 20 per
cent ad valorem, as hanging paper under paragraph 1309, or at 25
per cent ad valorem as manufactures wholly or in chief value of
grass or weeds under paragraph 1439, or at 5 cents per pound and 15
per cent ad valorem under paragraph 1305 as paper with the surface
or surfaces decorated or covered, or at 20 per cent ad valorem as a
nonenumerated manufactured article under paragraph 1459. The

paragraphs and parts of paragraphs upon which the importer relied in his protest are as follows:

PAR. 1309. * * * hanging paper, not printed, lithographed, dyed, or colored, 10 per centum ad valorem; printed, lithographed, dyed, or colored, 1½ cents per pound and 20 per centum ad valorem. * * *

PAR. 1439. Manufactures of * * * grass * * * weeds * ** * or of which these substances or any of them is the component material of chief value, not specially provided for, 25 per centum ad valorem.

PAR. 1305. Papers with coated surface or surfaces not specially provided for, 5 cents per pound and 15 per centum ad valorem; * * * papers * * * with the surface or surfaces wholly or partly decorated or covered with a design,. fancy effect, pattern, or character * * * or produced by lithographic process,. 4½ cents per pound, and in addition thereto, if embossed, or printed otherwise than lithographically, or wholly or partly covered with metal or its solutions, or with gelatin or flock, 17 per centum ad valorem.

PAR. 1459. * * * on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

The merchandise in issue is made from a weed which resembles a honeysuckle. In order to manufacture the article imported, the skin is pulled off the weed and with cotton thread is woven by the poor people of Japan into fabrics 8 yards in length. The fabric is pasted on paper at the factory and the grass surface is then colored with an aniline dye which stains the face of the woven fabric together with so much of the paper as may be exposed.

The article is a species of wall hangings known as grass cloth which was classified under the tariff acts of 1897, 1909, and 1913 as paper hangings.—In re Downing Co. (T. D. 26850); see also De Jonge *v.* Magone (159 U. S. 562, 565, et seq.). The provisions under which such merchandise was so classified are as follows:

Paragraph 402, act of 1897—

Paper hangings and paper screens or fireboards and all other paper not specially provided for in this act, twenty-five per centum ad valorem. * * *

Paragraph 415, tariff act of August 5, 1909—

* * * paper hangings with paper back or composed wholly or in chief value of paper, twenty-five per centum ad valorem.

Paragraph 328, act of 1913—

* * * Paper hangings with paper back or composed wholly or in chief value of paper, * * * 25 per centum ad valorem.

The Government contended that the tariff act of 1922 under which the merchandise was imported no longer provides for paper hangings and that therefore the importation was dutiable as assessed. We can not agree with that contention.

It is true that paper hangings are not provided for under that name by the act of 1922, but that act does provide for "hanging paper," and that designation commonly and ordinarily means either

paper for hanging or hangings or paper which hangs. It is perfectly apparent that Congress did not intend to provide for a paper which actually hangs inasmuch as paper could not well be in that condition at the time of importation. Hangings originally meant tapestries, velvets, leathers, and cloth hung loosely on walls as decorations. Subsequently wall papers were produced to imitate such tapestries, velvets, leathers, and cloth, and as those papers were used as wall decorations they acquired the name of *paper* hangings to distinguish them from tapestry, velvet, leather, and cloth hangings. The term "paper hangings," as now commonly understood, means webs of tinted or decorative paper used for covering walls, ceilings, etc. (See "Paper" and "Paper hangings"—Standard Dictionary; see also "Paper hangings" or "Wall paper"—New International Encyclopedia.) We are therefore of the opinion that the designation "hanging paper" means a paper for hanging or hangings and that as shown by the history of the legislation Congress intentionally used the designation in order to provide not only for paper hangings, that is to say, *tinted or decorative wall paper,* but for wall papers which were not printed, lithographed, dyed, or colored. Paragraph 1309 as originally passed by the House, read as follows:

·*Hanging paper,* not printed, lithographed, dyed, or colored, 10 per centum ad valorem; *paper hangings with paper back or composed wholly or in chief value of paper, not printed, lithographed, dyed, or colored, 5 cents per pound;* printed, lithographed, dyed, or colored, 20 per centum ad valorem. (Italics not quoted.)

That provision attempted to make a distinction between hanging paper and paper hangings. The Senate, however, recognizing that "paper hangings" were tinted or decorated, struck out of the House paragraph the words "paper hangings with paper back or composed wholly or in chief value of paper not printed, lithographed, dyed, or colored, 5 cents per pound." By that amendment "hanging paper" was converted into a generic term which comprised not only wall papers that were tinted or decorated, that is to say, "paper hangings," but also all paper for walls or ceilings not printed, lithographed, dyed, or colored.

Even if the term "hanging paper" were open to two constructions, one of which favored the Government and the other the importer, that construction must be accepted which favors the importer.— United States *v.* Hatters' Fur Exchange (1 Ct. Cust. Appls. 198, 202; T. D. 31237); Central Vermont Railway Co. *v.* United States (10 Ct. Cust. Appls. 31, 36; T. D. 38260); United States *v.* Darling (10 Ct. Cust. Appls. 57, 58; T. D. 38334); United States *v.* Fields & Co. (10 Ct. Cust. Appls. 183, 191; T. D. 38550); Hartranft *v.* Wiegmann (121 U. S. 609, 616); Eidman *v.* Martinez (184 U. S. 578, 583).

As the importation is a paper for covering walls and ceilings, it is a hanging paper and should have been subjected to a duty of 1½

cents per pound and 20 per cent ad valorem, as prescribed by para-graph 1309 of the tariff act now in force.

The judgment of the Board of General Appraisers is therefore *reversed.*