UNITED STATES *v.* KURT ORBAN CO., INC. (No. 4990)[1]

United States Court of Customs and Patent Appeals, December 7, 1959

*George Cochran Doub,* Assistant Attorney General and *Richard E. FitzGibbon,* Chief, Customs Section (*Alfred A. Taylor, Jr., Murray Sklaroff,* trial attorneys, of counsel), for the United States.

*Eugene R. Pickrell,* (*Richard F. Weeks* of counsel) for appellee.

[Oral argument October 9, 1959, by Mr. Sklaroff and Mr. Weeks]

Before WORLEY, Chief Judge, and RICH, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK [2]

WORLEY, Chief Judge, delivered the opinion of the court:

The issue in this appeal by the Government is the proper classification of an importation invoiced as a "Lindemann Metal Scrap Baler, and parts." The Customs Court sustained the importer's protest and held it dutiable under paragraph 372 of the Tariff Act of 1930 as a machine n.s.p.f., rather than as a machine tool, as classified by the collector.

The relevant portions of the statute read:

Paragraph 372, as modified by T.D. 51802:

Machine tools (except jig-boring machine tools) _____ 15% ad val.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of articles provided for in any item 372 of this Part:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Other_____ The same rate of duty as the articles of which they are parts.

---

[1] C.A.D. 724.

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to the provisions of Title 28, United States Code, Section 294(d).

Paragraph 372, as modified by T.D. 52739:

Machines, finished or unfinished, not specially provided for:

\* \* \* \* \* \* \*
    Other \* \* \*_____ 13¾% ad. val.

Parts, not specially provided for, wholly or in chief
   value of metal or porcelain, of any article provided
   for in any item 372 in this Part:

\* \* \* \* \* \* \*
    Other_____ The rate for the article
                                        of which they are
                                        parts.

\* \* \* \* \* \* \*

As a proviso to paragraph 372 of the basic Tariff Act is the following:

*Provided further*, That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employs a tool for work on metal.

The device is adequately described by an officer of the importing corporation, the only witness called, as follows:

Well, the scrap which is either steel scrap or non-ferrous scrap is dumped into the assembly chamber, the half-pressure ram is retracted, the scrap falls all the way down into the present assembly chamber and the half-pressure ram pushes it into the compression chamber.

During this operation, the excess scrap which sticks out above the bottom of the assembly chamber is sheared over and remains on the cover of the assembly chamber, the compression chamber is now closed. When a second hydraulic ram compresses the bale to a density of approximately 25 percent of the metal density and after this compression has been completed, this bale which is so to say a bundle, is extracted through an opening in the compression chamber on to a conveyor belt and transported to where it has to go.

We also quote the following pertinent matter from the Government brief:

While the machine cuts off the pieces of scrap that protrude out of the assembly chamber, it does not do any other cutting operation or any fabricating or shaping or manufacturing. The main job of the baler is to take voluminous scrap and compress it into smaller bundles \* \* \*.

There is no dispute that the device is a machine; the question is whether it is also a machine tool and, therefore, more specifically provided for. In urging the latter classification, the Government relies heavily on the following language in the proviso: "\* \* \* any machine operating other than by hand power which employs a tool for *work* on metal." (Italics ours.)

The Customs Court, after weighing a number of decisions, disposed of the Government's contentions as follows:

In the cases cited, it appears that the primary function of the devices was to perform an operation upon metal in order to improve and advance its status

for further use. In the instant case, however, the primary function of the Lindemann baler is merely that of compressing scrap metal into such form that it becomes more readily available for handling and transportation. Its mechanical and physical properties have not been altered. As stated by the witness Orbanowski, "The main job of the baler is to take voluminous scrap and compress it into smaller bundles." Moreover, the metal which is sheared off in the baling operation is not thrown away but is used in the next baling operation.

Plaintiff cites a number of decisions in which various devices were held to be dutiable as machine tools and points out that, in such cases, the articles held to be machine tools performed "a task of fabrication or manufacture or production of an article," whereas the Lindemann baler does not manufacture or produce a new article—it merely compresses scrap from a loose form to a compact form.

What is meant by a machine tool has been before the Customs Court and this court frequently, but no precedent has been found to control the particular importation at bar. The following were found to be *parts* of machine tools:

Die blocks constituting the operative part of a drop hammer. *F. W. Meyers & Co., Inc.* v. *United States*, 60 Treas. Dec. 1293.

Blades of a device for shearing metal plates. *United Machine Tool Corp.* v. *United States*, 64 Treas. Dec. 98.

Steel rolls forming parts of a rolling mill for shaping metal. *Alex. Benecke* v. *United States*, 30 CCPA 55, C.A.D. 214.

While the following were held to be machine tools:

A machine for cutting steel billets into lengths suitable for subsequent manufacture. *Henry Pels & Co.* v. *United States*, 65 Treas. Dec. 1294.

A machine for cutting a disk from a sheet of aluminum and shaping and fitting it over the top of a milk bottle. *Alka Bottle Capping Machine Co.* v. *United States*, 73 Treas. Dec. 1210.

A machine for cold-rolling metal. *John L. Vandiver* v. *United States*, 34 Treas. Dec. 200.

On the other hand, in *Keith Dunham Co.* v. *United States*, 26 CCPA 250, C.A.D. 24, it was held that a power driven machine which employed a blow torch for cutting metal along a line was not a machine tool.

None of the cited cases gives a clear interpretation of the meaning of "work" as used in the proviso, nor have we found any case which provides such an interpretation.

The word "work" is susceptible of such a wide variety of meaning that we have grave doubts Congress intended it to be construed as broadly as the Government urges. For example, in a broad sense any tool which changes the shape, size, or even the position of a piece of metal in any manner and for any purpose may be literally said to do "work" on it, even though the nature of that particular

"work" be wholly incidental to the primary function of the device. Under such circumstances there is a substantial doubt in our mind that Congress intended that word to be given such a broad construction, and we think it proper to resolve that doubt in favor of the importer. *United States* v. *Sussfeld*, 1 Ct. Cust. Appls. 51, T.D. 31030; *Woolworth* v. *United States*, 1 Ct. Cust. Appls. 120 T.D. 31119; and *Downing & Co. (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 451, T.D. 40614.

In our opinion the conclusion of the Customs Court is a reasonable interpretation of the statute and proviso. That view is supported by reference to the Summary of Tariff Information, 1929, p. 813, which was considered in *Keith Dunham*, and reads:

* * * Typical basic machine tools are the lathe which revolves the work while a cutter is held against it; the planer, which moves the work forward and back under a planing tool; the drilling machine for drilling holes; the miller, in which the work is shaped by the action of revolving toothed cutters, and the grinding machine, in which abrasive wheels are used to remove metal.* * *

It is obvious that none of the above exemplars even remotely resemble the unit at bar.

We have given careful consideration to the cases cited and arguments advanced by the Government but find no reason therein to disturb the judgment appealed from.

Martin, J., did not participate in the decision of this case.

———

Kirkpatrick, Judge, dissenting.

I find myself unable to agree with the majority in the conclusion that the Lindemann baler is not a machine tool.

The majority opinion, in effect, adopts the common meaning of the term "machine tool," which would also appear to have been the basis of the portion of the Summary of Tariff Information, 1929, cited by the majority, and the exemplars given therein. I would agree, except for the fact that Congress provided a statutory definition of a machine tool as "a machine operating other than by hand power which employs a tool for work on metal." I can see no reason for this provision unless Congress was not satisfied with the common meaning and intended to adopt a special definition and one which is obviously broader.

The basic difference seems to me to be that the majority opinion, in line with the exemplars set out in the Summary of Tariff Information, appears to look to the use to which the resultant product is put whereas the definition adopted by Congress embodies the more objective concept of what the machine actually does—that is, the operation rather than the result.

The Lindemann baler employs tools—shears and two rams—and with them forms a loose mass of metal into a compact bundle of pre-

determined size and shape, cutting off the excess. In its operation it necessarily deforms or makes changes in the shape of practically all the pieces of metal on which it operates. It produces an article quite distinct from the loose scrap fed into it. It may still be scrap, but I do not see how it can be said that it has not been worked upon by tools. This, it seems to me, amply meets the statutory definition.

The majority concedes that what the baler does is "work," within the literal meaning of that term, but holds that Congress did not intend it to be so read. However, unless Congress did so intend, the proviso was useless and I see no reason why it should not be given its common meaning.

The thing which did the "work" on metal in the *Keith Dunham* case was not a tool. It was a flame, and no part of the secator itself (which was a tool) worked on or even touched the metal.

For the foregoing reasons, I would reverse.