## DAVISON v. UNITED STATES (No. 498).[1]

1. "COLORED" DEFINED.

The word "colored" is a participial adjective used generally with the meaning of "having a color." The color's origin does not enter into the essential meaning of the word.

2. A PAPER MADE OF MATERIAL WITH AN INHERENT COLOR.

A paper manufactured of natural barks or reeds having an inherent color that persists through all processes to which it may be subjected and remains a characteristic of the finished product is a colored paper; and copying paper made of it is colored copying paper, dutiable under paragraph 397, tariff act of 1897.

## United States Court of Customs Appeals, May 22, 1911.

TRANSFERRED from United States Circuit Court for Southern District of New York, G. A. 6758 (T. D. 28975).

[Affirmed.]

*Joseph G. Kammerlohr* (*John Giblon Duffy* of counsel) for appellants.
*D. Frank Lloyd,* Assistant Attorney General (*Charles E. McNabb* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The appellants imported into this country a quantity of copying paper from Japan. The collector classified it as "copying paper" within the provisions of paragraph 397 of the act of 1897, and assessed upon it a duty of 6 cents per pound and also 15 per cent ad valorem.

The appellants protested, contending that the paper was not within the description of the paragraph because it was not white, colored, or printed as required by its terms, and that it properly fell within the provisions of paragraph 402 as paper not specially provided for in the act.

This protest was overruled by the board, and the appellants now pray for a reversal.

Paragraph 397 reads as follows:

397. Papers commonly known as copying paper, stereotype paper, paper known as bibulous paper, tissue paper, pottery paper, and all similar papers, white, colored, or printed, weighing not over six pounds to the ream of four hundred and eighty sheets, on a basis of twenty by thirty inches, and whether in reams or any other form, six cents per pound and fifteen per centum ad valorem; if weighing over six pounds and not over ten pounds to the ream, and letter copying books, whether wholly or partly manufactured, five cents per pound and fifteen per centum ad valorem; crepe paper and filtering paper, five cents per pound and fifteen per centum ad valorem.

---

[1] Reported in T. D. 31631 (20 Treas. Dec., 1091).

It is practically conceded by the appellants that the paper in question meets all the requirements of the above paragraph except only the specification as to color. The paragraph, as stated, includes three kinds, namely, white, colored, or printed. This paper is obviously neither white nor printed, and the appellants contend that it is not colored. On the other hand, the Government contends that the paper is colored; and this makes the sole question in the case. If the paper is "colored," it falls within the terms of the paragraph.

The paper is manufactured in Japan from natural barks or reeds. These have an inherent color which persists throughout the manufacturing processes and is imparted to the finished product. Without the addition therefore of any added or foreign pigments the paper so manufactured has a decided tan or buff color.

The appellants do not deny the existence of this color as a quality of the finished paper, but they contend that nevertheless the paper should not be called "colored" because of the fact that its color resulted as a mere incident to the manufacture of the article as paper, and was not produced by any additional application of color. They contend that the word "colored" as here used does not mean simply that the paper should have a color, but also that such color should be produced by some pigment added to the manufacturing process for that purpose, in addition to the materials entering into the production of the article as paper. The Government of course contradicts this definition.

The word "colored" is a participial adjective used frequently and even generally with the meaning of "having a color." The dictionaries sustain this statement. Such a definition of the word is almost invariably the first one given by such authorities. And the origin of the color or the method of its production in the article does not enter into the essential meaning of the term, which taken alone simply describes an existing quality or condition. In general speech, too, if an article has a color it is called colored. This applies with especial force to the paragraph in question which undertakes to describe the article by its qualities rather than by the method of its manufacture. Inasmuch, therefore, as this paper has a color it may aptly be described as colored; and it therefore comes within the description of the paragraph.

It appears that in the corresponding paragraph of the present tariff act the words "colored or uncolored, white or printed" are used instead of the words "white, colored or printed." However, we do not regard this as having the effect of a legislative indorsement of the view advocated by the appellants.

The decision of the board is therefore *affirmed.*