(C. D. 1213)

VANETTA VELVET CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided February 27, 1950)

*Brooks & Brooks* (*Frederick W. Brooks* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*Chauncey E. Wilowski,* special attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: The merchandise involved in the instant case consists of certain plain woven cotton cloth which was assessed with duty by the collector at the port of New York at the primary rates provided for in paragraph 904 (c) of the Tariff Act of 1930, as colored cotton cloth, plus the additional duty of 10 cents per pound imposed pursuant to paragraph 924 of said act, on the cotton contained therein having a staple of more than one and one-eighth inches in length. The correctness of these assessments has not been challenged.

In addition, however, the collector assessed the merchandise with duty at the rate of 5 per centum ad valorem under paragraph 904 (d) of the Tariff Act of 1930 as being cotton cloth woven with two or more colors or kinds of filling. It is against this action of the collector that this protest has been filed.

Paragraph 904 (d) of the Tariff Act of 1930 provides in part as follows:

* * * cotton cloth, other than the foregoing, woven with two or more colors or kinds of filling, shall be subject to a duty of 5 per centum ad valorem.

It is the position of the plaintiff herein that the imported merchandise was not woven with two or more colors or kinds of filling and hence that the additional duty provided for in paragraph 904 (d), *supra,* should not have been assessed. The defendant, on the other hand, urges that the collector's action in imposing the additional duty was proper.

It appears from the uncontradicted testimony that, with respect to all of the involved merchandise, all of the filling threads were made of the same kind of yarn and of the same yarn number, and that some of the filling threads were colored one color only and the remaining filling threads were in their natural state, not bleached, dyed, printed, or colored.

No sample of the merchandise was offered in evidence at the original trial of this case. However, thereafter, there was stipulated into evidence, as an illustrative exhibit, a piece of cloth which was produced by the same method of weaving and of the same yarns. It was further stipulated with respect to this exhibit, that the filling threads run crosswise in the fabric from the selvage, which is marked "S" thereon, to the other side of the fabric, and the warp threads run up and down throughout the length of the fabric.

An inspection of this exhibit reveals that the warp threads are primarily of a beige or natural hue, but that at intervals of approximately one-tenth of an inch apart, and alternating, there are two green threads and two red threads. The filling threads appear to form a pattern of alternating gray and beige, with eight gray threads and two beige threads, consecutively inserted into the fabric. With respect to the filling threads, however, there is no evidence to establish whether it is the gray threads or the beige threads which have been subjected to the dyeing process.

Plaintiff argues that, since it has been established that all of the filling threads which are dyed are of one color, and all of the remaining threads are natural and unbleached, there are not two or more colors of fillings in this cloth. This argument is predicated upon the proposition that Congress, in paragraph 904 as a whole, intended to distinguish the words "bleached," "dyed," "printed," or "colored," one from the other, and that therefore threads which are in the natural state, not bleached, do not possess color.

The cause and effect relationship between the proposition so stated and the conclusion reached seems somewhat far-fetched. That Congress intended to ascribe different meanings to the words "bleached," "dyed," "printed," and "colored" does not *ipso facto* establish that threads which are in their natural state, not bleached, do not possess a color.

Congress has, in paragraph 904 of the Tariff Act of 1930, devised a comprehensive scheme for the assessment of duty upon cotton cloths, wherein the rate of duty progressively increases in accordance with the degree of advancement of the fabric by the application thereto of additional manufacturing processes. Hence, cloth which is unbleached takes the lowest rate; bleached fabrics are dutiable at a higher rate; and fabrics which have been printed, dyed, or colored bear the highest assessment. The intention to distinguish cloth thus variously treated

is manifest. And the fact that Congress separately employed the terms "printed," "dyed," and "colored" indicates as well a separate meaning for each of such adjectives. *United States* v. *N. Erlanger, Blumgart & Co., Inc.*, 16 Ct. Cust. Appls. 437, T. D. 43189; *E. S. Swann & Co., Ltd.* v. *United States*, 65 Treas. Dec. 1450, Abstract 27718.

Has Congress by the use of the words "printed," "dyed," and "colored" thereby expressed an intention to treat cloth which has been neither printed, dyed, nor colored, as cloth which does not possess color? We think not. The word "colored" was included in the paragraph in addition to the words "printed" and "dyed" in order to cover cloths made with printed, dyed, or partly dyed yarns. See Summary of Tariff Information, 1921, page 860, wherein the following appears:

Countable cotton cloths have been divided into the three classes—namely, basic, bleached, and printed, dyed, colored, or woven-figured. The basic classification includes only unbleached plain (i. e., plain-woven, twilled, or sateen) cloths, listed as "not bleached, printed, dyed, colored, or woven-figured." The word "colored" is used, in addition to the terms "printed" and "dyed," in order to cover cloths made with printed, dyed, or partly dyed yarns.

It is thus made abundantly clear that Congress in using the term "colors" in said paragraph 904 (d) never intended that an article or thing which possessed color by virtue of its inherent nature was to be considered as an article or thing not having color, nor that color can be present in an article only when it is the result of artificial or external application.

The question of whether an article may properly be described as an article having a color, although the color is inherent and not applied by any dyeing, bleaching, printing, or other process was one which was determined by our appellate court in the case of *Davison* v. *United States*, 2 Ct. Cust. Appls. 78, T. D. 31631. The court was there concerned with the proper classification of certain copying paper under the Tariff Act of 1897. The merchandise had been classified under that portion of paragraph 397 of said act which provided for copying paper, white, colored, or printed. It appeared that the paper in question, admittedly copying paper, was manufactured from certain natural barks or reeds, which had an inherent color, and that such color persisted throughout the manufacturing processes required to transform the barks or reeds into paper. The finished product was of a decidedly tan or buff hue. The importer therein argued that the merchandise was not properly classifiable under said paragraph 397 because the color which it possessed was not separately applied. In rejecting that contention and upholding the collector's classification, the court stated (p. 79):

The word "colored" is a participial adjective used frequently and even generally with the meaning of "having a color." The dictionaries sustain this statement. Such a definition of the word is almost invariably the first one given by such authorities. And the origin of the color or the method of its production in the article does not enter into the essential meaning of the term, which taken alone simply describes an existing quality or condition. In general speech, too, if an article has a color it is called colored. This applies with especial force to the paragraph in question which undertakes to describe the article by its qualities rather than by the method of its manufacture. Inasmuch, therefore, as this paper has a color it may aptly be described as colored, and it therefore comes within the description of the paragraph.

In apparent but not actual conflict with the decision in the *Davison* case, *supra*, is *Charles C. Perry* v. *United States*, 17 Cust. Ct. 129, C. D. 1032, affirmed in 35 C. C. P. A. (Customs) 129, C. A. D. 383, which involved a construction of paragraph 1504 (b) of the Tariff Act of 1930. It was there held that certain hats made of paper produced from pulp which had been bleached were properly classifiable under the provisions of paragraph 1504 (b) (2) as hats, wholly or in chief value of paper, if bleached, colored, dyed, or stained. In reaching that conclusion our court stated (p. 131):

We do not feel that it can be successfully denied that all the materials and articles named in said paragraph 1504, in their natural state, possess color. It is a matter of common knowledge that all hats, and all materials of which hats are made, possess color. Therefore; when the Congress made provision for "Hats * * * composed wholly or in chief value of * * * paper * * * if * * * colored," it had in mind the superaddition of coloring matter of some kind to the material or article. If this were not true, then the use of the word "colored" in said paragraph 1504 is absolutely meaningless. Under the doctrine of *noscitur a sociis*, the meaning of "bleached" must be interpreted in the light of the meaning attributable to its correlated term "colored" in the same paragraph.

Should the term "colored" be construed to mean merely possessing color, then hats and other articles, and braids and other material, all provided for in said paragraph 1504, composed of straw, grass, or any of the other named materials, would be dutiable as hats, etc., or braids, etc., "colored," and this would be true even though the hats, etc., or the braid, etc., had not been subjected to any coloring process whatsoever, for the simple reason that all such materials and articles possess color naturally.

It is to be noted that we there affirmed the proposition which was quoted with approval by our appellate tribunal that certain materials and articles, in their natural state, possess color. Our holding that the word "colored," as used in said paragraph 1504 (b), presupposed an applied process, was derived solely from the context of the paragraph under consideration and our view as to what Congress had in mind in enacting it. Such holding is entirely consistent with the conclusions reached herein that the word "colored" in subdivisions (a) and (c) of paragraph 904 of the Tariff Act of 1930 likewise refers to color which has been applied rather than to color which is inherent. Neither conclusion, however, militates against the use of a different

meaning for the word "colors" as it appears in subdivision (d) of paragraph 904. Rather does it follow that the limited construction of the word "colored" when used in conjunction with such words as "bleached," "printed," "dyed," and the like, impels a broader definition of the noun "color" when employed alone.

As heretofore noted, the evidence in this case does not reveal, with respect to the illustrative exhibit, whether it is the gray threads which have been dyed and the beige threads which are in the natural state, or the contrary. Nor can such information be obtained from any non-technical inspection of the exhibit. In this deficiency of proof, there is, nevertheless, great significance. For to the eye of the casual observer all of the filling threads appear to possess color, and those threads may be accurately and precisely described by the color designations "gray" and "beige." It would require some type of expert testimony to disclose whether the hue which each of these threads undeniably possesses was inherent or the result of some applied process.

Webster's New International Dictionary, 1948 edition, defines the verb "bleach" as follows:

bleach, *v.* * * * 1. To make white, or whiter; as: a To remove the color or stains from; blanch. The bleaching of natural fibers to remove coloring matter, resin, wax, etc., includes washing, or scouring, and bleaching proper, or chemical treatment. The chief methods of bleaching cotton cloth are the *market bleach, Turkey-red bleach,* and *madder bleach.*

If the process of bleaching involves the removal of color in order to whiten a yarn or fabric, then obviously the yarn or fabric in the unbleached state has a color.

This conclusion finds support in a statement which appears in the Summary of Tariff Information, 1920, page 399, and is repeated verbatim in the 1921 edition of said volume, page 858, to the effect that "All cloths are included in the five *color* classifications—unbleached, bleached, printed, piece-dyed, and yarn-dyed. * * *" [Italics supplied.]

It thus appears that Congress in enacting the provision herein involved was apprised of the fact that as of 1921 unbleached cloths were regarded as being possessed of color.

Admittedly in the instant cloth there are some filling threads which have been subjected to a dyeing or coloring process. That those threads possess color is conceded. It has heretofore been established that the natural or unbleached threads which constitute the remaining portion of the filling also possess color, and that that color is different from the color of the dyed threads. Though the color of the dyed threads is applied and the color of the unbleached yarns is inherent, we are of the opinion that the imported fabrics are woven with two or more colors, in the filling.

We find, therefore, that the additional duty of 5 per centum ad valorem provided for in paragraph 904 (d) of the Tariff Act of 1930 was properly assessed by the collector. The claim in the protest is therefore overruled. Judgment will issue accordingly.