(C. D. 2394)

VICTOR ENGLAND AGENCIES, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 22, 1963)

*Glad & Tuttle* (*George R. Tuttle, Jr.*, of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: The collector of customs at the port of San Francisco assessed duty upon certain imported hanging paper at the rate of

[2] Jacobs, The Chemistry and Technology of Food and Food Products (1951), page 351.

½ cent per pound and 10 per centum ad valorem, pursuant to the provision for "Hanging paper, printed, lithographed, dyed, or colored," in paragraph 1409 of the Tariff Act of 1930, as modified by the Japanese Protocol to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 234, T.D. 53865, supplemented by Presidential notification, 90 Treas. Dec. 280, T.D. 53877.

It is the claim of plaintiff in the instant protests, which have been consolidated for purposes of trial, that said hanging paper is dutiable at the rate of 4 per centum ad valorem as "Hanging paper, not printed, lithographed, dyed, or colored," as provided in said paragraph 1409, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108.

By stipulation of the parties, it is agreed that the merchandise in issue is, in fact, hanging paper, and the plaintiff has limited its claim to the following three items listed on the invoices covered by the instant protests:

> Item No. JF–2548 in protest 61/16657
> Item No. PB–115 in protest 61/16656
> Item No. 21 in protest 61/16659

In all other respects, all other claims have been abandoned.

Samples of the three items in controversy are in evidence as plaintiff's exhibits 1, 2, and 3, respectively. They, and the hanging paper of which each is illustrative, are described by the following agreed statements:

Item JF–2548 (plaintiff's exhibit 1) "consists of natural fibers on a natural backing. The surface is composed of warped-cotton threads with a filling of unbleached vegetable fiber. The backing is composed of a pulp of chiefly ground wood, bleached sulfate, and some unbleached sulfite."

Item PB–115 (plaintiff's exhibit 2) "is composed of white woven paper on a natural backing. The surface is composed of woven twisted paper threads of bleached sulfate paper. The backing is composed of a pulp consisting chiefly of ground wood, bleached sulfate and sulfite, and unbleached sulfite."

Item 21 (plaintiff's exhibit 3) "consists of natural burlap on natural paper. The surface consists of unbleached vegetable fiber. The backing consists of a pulp with a brown surface and beige back, composed chiefly of ground wood, and bleached and unbleached sulfite."

It further appears of record that plaintiff's witness, Victor England, had personally observed the manufacturing steps in the production of the instant merchandise, and, so far as he could see, no additional color or pigment was introduced.

It does not seem, however, that any issue is raised over the matter of color addition. Rather has it been assumed for purposes of this case that no color other than that naturally appearing in the product is involved. Nor is there any doubt that the instant paper is neither printed, lithographed, nor dyed. The sole dispute between the parties centers about that category of the cited provisions embraced by the word "colored." Specifically, the question which is here presented for determination is whether or not hanging paper which possesses an inherent color is hanging paper, colored, within the contemplation of paragraph 1409, as modified by said Japanese protocol.

In substance, it is the contention of the plaintiff that, taken in the context in which it is used in paragraph 1409, the term "colored" must be construed as applying to the addition of coloring material in some form of manufacturing process and, therefore, an article which, in its natural state, possesses color is not colored within the meaning of the provision. It is argued that since the companion words "printed," "lithographed," and "dyed" plainly imply a treated condition, the word "colored" must similarly be interpreted.

Counsel for defendant urges, however, that both by definition and by judicial construction the word "colored" is a proper adjective to describe natural or inherent color, and since the instant hanging paper clearly possesses color, ranging in tone from light beige to tan, which, in fact, imparts to it its distinctive quality, it is colored within the contemplation of paragraph 1409, *supra*.

Recourse to standard lexicons readily confirms that the word "colored" describes as well that which is inherent as that which is added. The word is defined in Webster's New International Dictionary of the English Language, second edition, unabridged, 1958, as—

*adj.* **1. a** Strictly, having color;—often used in combinations; as, ash-*colored*, warm-*colored*. **b** More commonly in a restricted sense, having chroma. **c** Of a color different from the normal; specif., of foliage, etc., of a color other than (the normal) green.

\*    \*    \*    \*    \*    \*    \*

Funk & Wagnalls New "Standard" Dictionary of the English Language, 1956, states—

**1.** Having color; dyed or painted; tinged or stained. **2.** Specifically: (1) of a hue, not white or black; as, a *colored* sash. \* \* \*

The question remains, therefore, in what sense did Congress employ the word in providing for hanging paper (whether or "not") printed, lithographed, dyed, or colored?

One of the earliest cases to consider the meaning of the word "colored" in a tariff provision was that of *Davison* v. *United States*, 2 Ct. Cust. Appls. 78, T.D. 31631, wherein was involved the provision of paragraph 397 of the Tariff Act of 1897 for copying paper, white, printed, or colored. The paper in issue was concededly copying paper,

not white or printed, but having an inherent tan or buff color derived from the natural barks or reeds used in its manufacture. In holding that the subject copying paper was colored within the contemplation of said paragraph 397, the court stated:

The appellants do not deny the existence of this color as a quality of the finished paper, but they contend that nevertheless the paper should not be called "colored" because of the fact that its color resulted as a mere incident to the manufacture of the article as paper, and was not produced by any additional application of color. They contend that the word "colored" as here used does not mean simply that the paper should have a color, but also that such color should be produced by some pigment added to the manufacturing process for that purpose, in addition to the materials entering into the production of the article as paper. The Government of course contradicts this definition.

The word "colored" is a participial adjective used frequently and even generally with the meaning of "having a color." The dictionaries sustain this statement. Such a definition of the word is almost invariably the first one given by such authorities. And the origin of the color or the method of its production in the article does not enter into the essential meaning of the term, which taken alone simply describes an existing quality or condition. In general speech, too, if an article has a color it is called colored. This applies with especial force to the paragraph in question which undertakes to describe the article by its qualities rather than by the method of its manufacture. Inasmuch, therefore, as this paper has a color it may aptly be described as colored, and it therefore comes within the description of the paragraph.

Two elements entering into the conclusion reached by the court in the *Davison* case are, it seems to us, of especial significance to the present inquiry. In the first place, the provision itself embraced not only "colored" or "printed" copying paper, but as well "white" copying paper. Secondly, the court construed the term "colored," as therein used, as simply descriptive of an existing quality or condition, not dependent upon the method of manufacture. If "white" is properly connotative of an absence of color and the dictionaries so define it, but white copying paper was, nevertheless, explicitly provided for in the paragraph, then it would seem unreasonable to exclude from the scope of the provision copying paper possessing color not derived from artificial process, and a conclusion that the adjectives modifying the term "copying paper" are simply descriptive of an existing quality or condition reasonably follows.

Consequently, it may be said that the *Davison* decision does not necessarily dictate the interpretation of the term "colored" wherever else it may happen to appear in the tariff laws, and, indeed, a very different construction is to be found in *Charles C. Perry* v. *United States*, 17 Cust. Ct. 129, C.D. 1032 (affirmed *Same* v. *Same*, 35 CCPA 129, C.A.D. 383), in connection with the language of paragraph 1504 (b) (1) and (2) of the Tariff Act of 1930, reading, in part, "Hats * * * composed wholly or in chief value of * * * paper, * * * not blocked or trimmed, and not [or 'if'] bleached, dyed, colored, or stained."

There, the word "colored" was held to mean the result of the addition of a pigment for the following reasons:

We do not feel that it can be successfully denied that all the materials and articles named in said paragraph 1504, in their natural state, possess color. It is a matter of common knowledge that all hats, and all materials of which hats are made, possess color. Therefore, when the Congress made provision for "Hats * * * composed wholly or in chief value of * * * paper * * * if * * * colored," it had in mind the superaddition of coloring matter of some kind to the material or article. If this were not true, then the use of the word "colored" in said paragraph 1504 is absolutely meaningless. Under the doctrine of *noscitur a sociis*, the meaning of "bleached" must be interpreted in the light of the meaning attributable to its correlated term "colored" in the same paragraph.

Should the term "colored" be construed to mean merely possessing color, then hats and other articles, and braids and other material, all provided for in said paragraph 1504, composed of straw, grass, or any of the other named materials, would be dutiable as hats, etc., or braids, etc., "colored," and this would be true even though the hats, etc., or the braid, etc., had not been subjected to any coloring process whatsoever, for the simple reason that all such materials and articles possess color naturally.

The rule of reason supports the meaning adopted for the word "colored" in the *Perry* case as firmly as it does the meaning found to be applicable in the *Davison* decision, *supra*. Clearly, as the court observed by reference to the component materials in the hat provision, to define "colored" in terms of inherent qualities would operate to characterize all such materials as colored and render meaningless the provision for hats, not colored. It is interesting to note, moreover, that the meaning of the term "colored" was explored, although not directly involved in the case, to throw light upon the scope and meaning of the adjective in *pari materia* "bleached."

The doctrine of *noscitur a sociis* invoked by the court is a rule of construction to be applied where there is doubt as to the meaning of a word or expression used by the legislature, or where a word or phrase is ambiguous, or is susceptible of more than one meaning. The phrase translates literally as "it is known by its associates." It is ofttimes a helpful guide, when words appear in association with each other, to the determination of the scope of statutory language and the meaning the legislature may be said to have ascribed to each of the items mentioned. *United States* v. *R. F. Downing & Co.*, 17 CCPA 194, T.D. 43645; *The Golding Keene Company et al.* v. *United States et al.*, 44 Cust. Ct. 169, C.D. 2172, affirmed 48 CCPA 66, C.A.D. 766. In the last analysis, it is the intention of Congress which controls the interpretation of statutory language. *Sandoz Chemical Works, Inc.* v. *United States*, 43 CCPA 152, C.A.D. 623.

In this connection, it is well to bear in mind that the provision here in issue associates the word "colored" with three other adjectives, to wit, "printed," "lithographed," and "dyed," each of which is descrip-

tive of a state resulting from an applied process. Is it then not unlikely to reason that when Congress employed the word "colored" in this company it was referring to a state achieved by manipulation, rather than a quality existing naturally?

This is the interpretation which was placed upon similar language appearing in paragraph 904 of the Tariff Act of 1930, in the case of *Vanetta Velvet Corp.* v. *United States*, 24 Cust. Ct. 88, C.D. 1213. The immediate question involved in the case was whether or not certain plain woven cotton cloth was woven with two or more colors of filling, within the purview of subdivision (d) of said provision. The record showed that certain of the filling threads were in their natural state, possessing inherent color, while the remaining threads were colored one color only by an applied process, forming a pattern of alternating gray and beige tones. In holding that the fabric was woven with two or more colors of filling, we, of course, held that the word "colors" in said paragraph 904(d) embraced both inherent and applied color, following in principle the rule of *Davison* v. *United States*, *supra*. Nevertheless, we observed that, consistent with the holding in the *Perry* case, *supra*, wherever else in paragraph 904 the word "colored" appeared in company with such words as bleached, printed, and dyed, it referred solely to an applied process. In this connection, we stated:

It is to be noted that we there [*Charles C. Perry* v. *United States, supra*] affirmed the proposition which was quoted with approval by our appellate tribunal that certain materials and articles, in their natural state, possess color. Our holding that the word "colored," as used in said paragraph 1504(b), presupposed an applied process, was derived solely from the context of the paragraph under consideration and our view as to what Congress had in mind in enacting it. Such holding is entirely consistent with the conclusions reached herein that the word "colored" in subdivisions (a) and (c) of paragraph 904 of the Tariff Act of 1930 likewise refers to color which has been applied rather than to color which is inherent. Neither conclusion, however, militates against the use of a different meaning for the word "colors" as it appears in subdivision (d) of paragraph 904. Rather does it follow that the limited construction of the word "colored" when used in conjunction with such words as "bleached," "printed," "dyed," and the like, impels a broader definition of the noun "color" when employed alone.

While it is true that this court, in the recent case of *V. G. Nahrgang* v. *United States*, 48 Cust. Ct. 6, C.D. 2307, appeal pending, adopted the view that the word "colored" in the provision of paragraph 224 of the Tariff Act of 1930 for plate glass, "* * * bent, frosted, sanded, enameled, beveled, etched, embossed, engraved, flashed, stained, colored * * * painted, ornamented, or decorated," describes the article "by its qualities rather than by the method of its manufacture," it does not appear that the distinction between inherent and applied colors was a relevant consideration in the case. It was, in fact, established in the

record that the greenish tint of the subject glass derived from the introduction of a colorant into the manufacturing process.

Our further reflection upon the problem here convinces us that the term "colored," when used in connection with such words as printed, dyed, lithographed, stained, or bleached, whether or not descriptive of a quality, contemplates an advancement beyond that which exists in the natural or raw state.

We have carefully considered the excerpts from the 1929 and 1948 Summaries of Tariff Information, quoted in plaintiff's brief and adverted to by defendant, but find nothing therein helpful to the determination of the issue here involved.

Based upon the foregoing considerations, we find and hold that the instant items of wallpaper, to wit, JF–2548 in protest 61/16657, PB–115 in protest 61/16656, and 21 in protest 61/16659, are properly dutiable at the rate of 4 per centum ad valorem as hanging paper, not printed, lithographed, dyed, or colored, within the purview of paragraph 1409 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, *supra*. The claim in the instant consolidated protests is sustained to the extent indicated. All other claims, having been abandoned, are dismissed.

Judgment will be entered accordingly.