(C.D. 3894)

VICTOR ENGLAND AGENCIES, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 9, 1969)

*Glad & Tuttle* (*George R. Tuttle, Jr.*, of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Dominick M. Minerva, Robert T. Richardson*, and *Andrew P. Vance*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

RE, Judge: At the trial of this case, the plaintiff limited the claim in the protest to certain merchandise identified as invoice item PB-115 on entry 42539, and abandoned its claims insofar as they related to any other merchandise.

The controverted merchandise was classified by the collector of customs as "Wall paper" in item 256.05 of the Tariff Schedules of the United States, and was assessed with duty at the compound rate of 0.5 cent per pound and 10 per centum ad valorem. The plaintiff claims that the merchandise should properly have been classified as "Hanging paper" in item 252.55 of the tariff schedules, and subjected to duty at the rate of 4 per centum ad valorem.

The pertinent or competing provisions of the Tariff Schedules of the United States may be set forth as follows:

As classified:

Schedule 2, Part 4. Paper, Paperboard, and Products Thereof

Subpart C. Paper and Paperboard Cut to Size or Shape; Articles of Paper and Paperboard

\* \* \* \* \* \* \*

256.05 Wall paper_____ 0.5 cent per lb. +10% ad val.

As claimed:

Schedule 2, Part 4. \* \* \*

Subpart B. Paper and Paperboard, in Rolls and Sheets, Not Cut to Size or Shape

Subpart B headnotes:

1. This subpart covers paper and paperboard, in rolls and sheets, not cut to size or shape, and not made up into articles finished or not finished. Printed paper or paperboard is covered in this subpart only if the printing is merely incidental to the primary use of the article or is employed mainly for coloration or to produce a decorative or novelty effect.

Papers, not impregnated, not coated, not surface-colored, not embossed, not ruled, not lined, not printed, and not decorated:

\* \* \* \* \* \* \*

252.55 Hanging paper_____ 4% ad val.

This case has been submitted for decision upon the testimony of two witnesses, certain stipulated facts, and a sample of the merchandise in issue.

The first witness was Mr. Victor England who testified on behalf of the plaintiff. He testified that since 1949 he has been engaged in "[t]he general importing business, principally involving wallpaper or hanging paper." He handled various types of wallpaper such as grass cloth wallpaper and wallpaper made of other materials such as paper, woven paper, woven grass fibers, woven silk fibers and woven straw fibers. His area of sales, although principally in the West, encompassed all parts of the United States.

Plaintiff's illustrative exhibit 1 was a sample of merchandise which Mr. England identified as being illustrative of invoice item PB-115 covered by entry 42539. He stated that it was the same item of mer-

chandise that was the subject of an earlier case in which he had also appeared as a witness. *Victor England Agencies, Inc.* v. *United States*, 50 Cust. Ct. 83, C.D. 2394 (1963).

Counsel for the respective parties stipulated that exhibit 1 in the case presently before the court, "is composed of white woven paper on a natural backing. The surface is composed of woven twist paper threads of bleached sulfate paper. The backing is composed of a pulp consisting chiefly of ground wood, bleached sulfate and sulfite, and unbleached sulfite."

Mr. England testified to his familiarity with the process of manufacture of the merchandise in issue and described that process as follows:

> "* * * The paper is twisted into yarn, in the bleached yarn, and then set into looms, and is woven by a power loom into a cloth of twisted paper fibers. It is then taken and backed in a continuous backing process, and from that the rolls are cut to make a roll of this PB-115." (R.6)

The size of the roll when imported was described as a double roll 36 inches wide and 8 yards long. In the process of manufacture no color was added.

Mr. England had observed the installation and use of the merchandise. The length of the wallpaper is measured to the height of the wall to be covered. The paper is pasted with wheat paste and is affixed to the wall. This procedure is repeated until the wall area is covered. In his opinion, exhibit 1 is a form of paper for hanging. He stated: "[i]t could be wallpaper and hanging paper." In answer to a question, asked by the court, whether there is a difference between wallpaper and hanging paper, the witness replied that there is no difference— that they are the same.

Mr. Adrian Hazard, who testified on behalf of the defendant, identified himself as secretary of the Retail Paint & Wallpaper Dealers Association of the Greater Bay Area of San Francisco for the past three years, and, prior thereto, as president of that association. He had also been a national director of the Paint & Wallpaper Association of America from 1959 to 1963. He has a retail paint and wall covering store in San Francisco and has been in this business since 1952.

In the course of his business, Mr. Hazard has dealt with merchandise similar in all material respects to plaintiff's exhibit 1. He described it as a woven product, woven of paper similar to tissue paper and affixed to a stable paper for hanging purposes.

Mr. Hazard stated that he is familiar with the term stock or lining paper. When asked to explain the meaning in the trade of these terms, the witness stated that lining paper or blank stock, as it is called, is a hanging type paper without embossment, color, or any decorative

aspects. It is used to line bad walls or as a cushion under better wall coverings. When asked if there was a lining paper on plaintiff's exhibit 1, he stated that a product very similar to it in all respects is affixed to its back.

On being read the definition of "hanging paper" contained in the Tariff Classification Study, which states that hanging paper "is the stock used in the manufacture of wallpaper", the witness testified that exhibit 1 would not meet that definition but that only the backing would. The purpose of the paper strands which had been applied to the lining paper of exhibit 1 was for their decorative effect.

On or before August 31, 1963, the effective date of the Tariff Schedules of the United States, "wallpaper" was known in the trade as a decorative, flexible material, usually sold in rolls or sheets to be affixed to a wall as a decorative or maintenance media. In Mr. Hazard's opinion, exhibit 1 meets the definition of wallpaper as it was known on or before August 31, 1963.

On cross-examination, Mr. Hazard agreed that exhibit 1 is a form of paper for hanging on the wall and stated that he had never heard the term "hanging paper" used other than as he had previously described. He testified that although he had not installed wallpaper such as exhibit 1 he had seen it being installed, and agreed with the description of installation given by Mr. England.

The court also admitted, as part of the record in this case, a subsequent agreement of counsel for the parties that exhibit 1 does not, in fact, consist of impregnated paper.

Plaintiff appears to rely on the principle that where the common meaning of a tariff term has been determined by the court, and that term is repeated in substantially the same form in successive tariff acts, there is every indication of legislative approval of that common meaning. The court is fully cognizant of the principle of legislative acquiescence or ratification of judicial construction of statutory language. See *Sears, Roebuck and Co.* v. *United States,* 46 CCPA 79, 83, C.A.D. 701 (1959); *United States* v. *Great Pacific Co., Shui Tai & Co.,* 23 CCPA 319, 324, 326, T.D. 48192 (1936). See also discussion of legislative adoption and confirmation of judicial construction of statutory language in *Girouard* v. *United States,* 328 U.S. 61, 66 Sup. Ct. 826 (1946). However, the court does not agree that the principle is applicable to the facts of the present case.

The provision for "hanging paper" appeared for the first time in paragraph 1309 of the Tariff Act of 1922, and was carried over as paragraph 1409 of the Tariff Act of 1930 with the same degree of specificity as to whether the hanging paper was printed, lithographed, dyed, or colored.

During the life of the 1922 Tariff Act, the Court of Customs Appeals (now the Court of Customs and Patent Appeals) in the case of *Downing & Co. (Inc) v. United States*, 12 Ct. Cust. Appls. 451, T.D. 40614 (1925), reversed the trial court for not sustaining the classification and duty assessment of certain rolls of grass cloth as hanging paper within the *eo nomine* provision therefor in paragraph 1309 of the Tariff Act of 1922. The merchandise there in issue was manufactured from a weed woven into fabric with the use of cotton thread. The fabric, thus produced, was pasted on a paper backing and an aniline dye applied which stained both the woven fabric, and as much of the paper backing as remained exposed. In the course of its opinion, the appellate court expressed itself in the following language—

"It is true that paper hangings are not provided for under that name by the act of 1922, but that act does provide for 'hanging paper,' and that designation commonly and ordinarily means either paper for hanging or hangings or paper which hangs. * * * Hangings originally meant tapestries, velvets, leathers, and cloth hung loosely on walls as decorations. Subsequently wall papers were produced to imitate such tapestries, velvets, leathers, and cloth, and as those papers were used as wall decorations they acquired the name of *paper* hangings to distinguish them from tapestry, velvet, leather, and cloth hangings. The term 'paper hangings,' as now commonly understood, means webs of tinted or decorative paper used for covering walls, ceilings, etc. (See 'Paper' and 'Paper hangings'—Standard Dictionary; see also 'Paper Hangings' or 'Wall paper'—New International Encyclopedia.) We are therefore of the opinion that the designation 'hanging paper' means a paper for hanging or hangings and that as shown by the history of the legislation Congress intentionally used the designation in order to provide not only for paper hangings, that is to say, *tinted or decorative wall paper*, but for wall papers which were not printed, lithographed, dyed, or colored. Paragraph 1309 as originally passed by the House, read as follows:

'*Hanging paper*, not printed, lithographed, dyed, or colored, 10 per centum ad valorem; *paper hangings with paper back or composed wholly or in chief value of paper, not printed, lithographed, dyed, or colored, 5 cents per pound;* printed, lithographed, dyed, or colored, 20 per centum ad valorem. (Italics not quoted.)

"That provision attempted to make a distinction between hanging paper and paper hangings. The Senate, however, recognizing that 'paper hangings' were tinted or decorated, struck out of the House paragraph the words 'paper hangings with paper back or composed wholly or in chief value of paper not printed, lithographed, dyed, or colored, 5 cents per pound.' By that amendment 'hanging paper' was converted into a generic term which comprised not only wall papers that were tinted or decorated, that is to say, 'paper hangings,' but also all paper for walls or ceilings not printed, lithographed, dyed, or colored." [Italics quoted.] *Id.* at 453–54.

The foregoing construction of the term "hanging paper" may be deemed to have been given legislative approval when the language of paragraph 1309 of the 1922 Act was carried over verbatim and without rate change into paragraph 1409 of the Tariff Act of 1930.

Merchandise the same as that at bar was the subject of decision in *Victor England Agencies, Inc.* v. *United States*, 50 Cust. Ct. 83, C.D. 2394 (1963). It was classified as hanging paper, colored, in paragraph 1409 of the 1930 Tariff Act, as modified, and claimed to be subject to classification as hanging paper, not colored, under the same statutory provision which provided a lower rate of duty. The court there found that hanging paper which possessed inherent color rather than color introduced in the manufacturing process was not hanging paper, colored, in the context of paragraph 1409 and sustained the plaintiff's claim.

The fact, however, that merchandise identical to that presently before the court was classified by the customs officials and held by this court in the *Victor England Agencies* case to be "hanging paper" under the Tariff Act of 1930 does not preclude a different conclusion in the instant case since the merchandise at bar was imported at a time when different statutory provisions were in effect.

It is true, as stated in *United States* v. *Great Pacific Co., Shui Tai & Co.*, 23 CCPA 319, 324, T.D. 48192 (1936), that—

> "* * * A common meaning, having been once established and determined by a court, will be presumed to continue *until the language is changed by subsequent legislation.*" [Emphasis added.]

Since there has been a change in the statutory provisions, the controversy presently before the court involves precisely such a circumstance.

The merchandise covered by the *Victor England Agencies* case was classified pursuant to the Tariff Act of 1930, as modified by the Japanese Protocol to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 234, T.D. 53865, supplemented by Presidential notification, 90 Treas. Dec. 280, T.D. 53877, whereas the merchandise presently in issue is subject to classification pursuant to the Tariff Schedules of the United States, which became effective August 31, 1963.

It is to be noted that under the Tariff Act of 1930, as modified, hanging paper is provided for in paragraph 1409 at different rates depending upon whether the paper is or is not printed, lithographed, dyed, or colored. The provision for hanging paper in item 252.55 of the Tariff Schedules of the United States, however, applies only to such hanging paper as is "not impregnated, not coated, not surface-colored, not embossed, not ruled, not lined, not printed, and not decorated." Item 256.05 of the tariff schedules provides for wallpaper without qualification.

It is well established in customs jurisprudence that the tariff laws are drafted in the language of commerce which is presumptively that in common use. *Marshall Field & Co.* v. *United States*, 45 CCPA 72, C.A.D. 676 (1958). And it is equally well established that "the courts, in determining the common meaning of a term may accept or reject evidence of such meaning and may, as an aid, consult the dictionaries, lexicons, and written authorities as to such common meaning." *United States* v. *Tropical Craft Corp., Successors to Tropical Craft Import & Export Corp.*, 42 CCPA 223, C.A.D. 598 (1955).

Reference to *The Dictionary of Paper*, Second Edition (1951), published by the American Paper and Pulp Association, discloses the following common meanings of the pertinent terms:

"Hanging Paper.—A term used to describe the raw stock used in the manufacture of wallpaper. * * *"

"Wallpaper.—A hanging raw stock or tile stock * * * which has been suitably printed or decorated for wall coverings. * * *"

The foregoing definitions appear *in haec verba* in the current Third Edition of *The Dictionary of Paper* published in 1965.

That it was intended, in the current Tariff Schedules of the United States, to carry over to the classification of imported merchandise for duty purposes the foregoing distinction between hanging paper and wallpaper is corroborated by the following explanatory notes in Schedule 2 of the Tariff Classification Study. This Study, prepared by the United States Tariff Commission for congressional consideration pursuant to a mandate of Congress (Public Law 768, 83rd Congress, 68 Stat. 1136), states:

"Item 252.55 covers hanging paper which is the stock used in the manufacture of wallpaper. No rate change is involved."

\* \* \* \* \* \* \*

"Item 256.05 covers wall paper presently dutiable at 0.5 cent per pound plus 10 percent ad valorem in paragraph 1409. No rate change is involved. In paragraph 1409, this article is described as 'hanging paper, * * * printed, lithographed, dyed, or colored'. The term 'wall paper' would clarify the meaning of this provision." (2 Tariff Classification Study, 98, 107.)

Admittedly, "the basic rule of construction applicable to any case involving the construction of a statute is that the intent of the Congress is to be given effect." *United States, etc.* v. *Simon Saw & Steel Co.*, 51 CCPA 33, 40, C.A.D. 834 (1964). To yield to legislative intent may be stated to be the "master rule" in the construction and application of statutes. *United States* v. *Clay Adams Co., Inc.*, 20 CCPA 285, 288, T.D. 46078 (1932).

In view of the foregoing expressions of legislative intent, the court concludes that the provision for "Hanging paper" in item 252.55 of the Tariff Schedules of the United States applies to the basic paper

from which the "Wall paper" of item 256.05 is ultimately produced. When the basic paper or raw stock is printed, lithographed, colored, or otherwise advanced, such as in the present instance by having combined therewith interwoven strands of paper producing a loosely woven fabric effect, broadly termed "grass cloth", such paper may no longer be considered to be "Hanging paper" within the intent and meaning of that term as used in the Tariff Schedules of the United States. It then comes within the provision for "Wall paper", as classified. The record evidence is clear that the merchandise in issue in its condition as imported consists of wallpaper in a finished condition, ready, after paste has been applied, to be affixed to walls to serve its end purpose as wallpaper. It is consequently properly classifiable as "Wall paper" under item 256.05 of the Tariff Schedules of the United States.

In view of the foregoing, the claim in the protest for classification of the merchandise identified as invoice item PB–115 on entry 42539 as hanging paper in item 252.55 of the Tariff Schedules of the United States is overruled. As to all other claims and all other merchandise, the protest, having been abandoned, is dismissed.

Judgment will issue accordingly.