**INDIAN HEAD, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 79-1.**

United States Court of Customs and Patent Appeals.

April 26, 1979.

Edward J. Farrell, Washington, D. C. (Bronz & Farrell, Washington, D. C.), attorneys of record, for appellant.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Acting Director, Commercial Litigation Branch, Joseph I. Liebman, Madeline B. Cohen, Susan C. Cassell, New York City, for the United States.

Before MARKEY, Chief Judge, RICH, BALDWIN, and MILLER, Judges, and KASHIWA,* Judge.

KASHIWA, Judge.

This appeal is from the judgment of the United States Customs Court, 81 Cust.Ct., C.D. 4758, 458 F.Supp. 807 (1978), which rejected the importer-appellant's claim that the imported merchandise, white wool yarn, was entitled to duty-free entry under item 307.60 of the Tariff Schedule of the United States (TSUS). We reverse.

*Background*

The imported merchandise consists of three inch strips of white wool yarn used for latch hooking articles such as rugs, pillows, and wall hangings. This white yarn is purchased, marketed, packaged, and priced in the same way as three inch strips of wool yarn of 46 different colors. The imported yarn has been changed from its natural color to white by bleaching it with peroxide and then treating it with Uvitex, an optical fluorescent brightener often referred to as white dye.

The regional commissioner of customs classified the imported yarn under TSUS

---

* The Honorable Shiro Kashiwa, Judge, United States Court of Claims, sitting by designation.

item 307.64,[1] a basket provision. The importer contested, claiming that the imported yarn should have been classified under TSUS item 307.60,[2] a more specific, duty-free provision. The Customs Court sustained the commissioner's classification concluding that the imported yarn did not fall within TSUS item 307.60 because it was not "colored" as that term is defined in TSUS Schedule 3, Headnote 2(b).[3] The court gave two bases for this decision: (1) The court concluded that Congress did not contemplate by using the phrase "in which color is imparted" a color change brought about by the removal of color; and (2) the court determined that white is not a color.[4]

## OPINION

This appeal raises the question of what Congress meant when it used the phrase "in which color is imparted" in the definition of the term "colored" in TSUS Schedule 3, Headnote 2(b):

> [T]he term "colored", as used in connection with textile materials or textile articles, means that they have been subjected to a process such as, but not limited to, dyeing, staining, painting, printing, or stenciling, *in which color is imparted* at any stage of manufacture to all or part of the fiber, yarn, fabric, or other textile article, except identification yarns and except marking in or on selvages. [Emphasis added.]

■ One of the basic rules of statutory construction used in customs classification

cases is the doctrine of *noscitur a sociis*. R. Sturm, *A Manual of Customs Law* 177–79 (1974). Under this doctrine, the meaning of a word may be ascertained by reference to the meaning of words associated with it. In headnote 2(b), the phrase "in which color is imparted" is associated with the exemplar processes of "dyeing, staining, painting, printing, or stenciling." Thus, applying the rule of *noscitur a sociis* here, we must conclude that Congress meant by the phrase "in which color is imparted" the phenomenon that occurs when an article is dyed, stained, painted, printed, stenciled, or similarly processed.

■ This leads us to the question of whether the imported yarn has been subjected to any of such processes.[5] Appellant-importer argues that treatment of the yarn with Uvitex constitutes dyeing. The Government disagrees.

The testimony of the Government's witnesses is very generalized and ambiguous on this point. Dr. Allen states that "[a]n optical brightener is often referred to as a white dye" but adds that "[he] thinks [this] is confusing because [he] believes that the function of the brightener is not to add color, but to remove it." Professor Price comments that treatment of yarn by bleaching it and subjecting it to a process using optical brighteners "constitute[s] a dyeing, but not a dyeing that imparts color."[6]

The testimony of the importer's witness, Mr. Hay, is more helpful since he describes

---

1. Yarns of wool or hair:

       \*     \*     \*     \*     \*     \*

   307.64   Other

2. Yarns of wool or hair:

   307.60   Yarns of wool, colored, and cut into uniform lengths of not over 3 inches, in immediate packages or containers not over 6 ounces in weight including the weight of the immediate package or container.

3. See *infra*.

4. There is no dispute that the imported yarn meets all of the other conditions of TSUS item 307.60, save the requirement that the yarn be colored.

5. Just because the imported yarn was not subjected to one of the exemplar processes does

not resolve the issue, since headnote 2(b) is not limited to these processes. However, if the yarn was subjected to one of these processes then color had to be imparted because the exemplar processes indicate what imparting color means.

6. It is not clear what Professor Price means by this statement. Clearly, his use of the terms "dyeing" and "imparts" differs from the meaning Congress attached to these words. Under Congress' use of these terms, there could be no such thing as a dyeing which does not impart color, since "dyeing" is one of the exemplar processes which defines what imparting color means.

what actually occurs when yarn is treated with Uvitex and compares this process with that which occurs in dyeing to other colors. The two processes are strikingly similar. Both are performed in conventional skein dyeing machines. Both require acidic conditions. In both the temperature is abruptly raised from around 115 degrees to around 200–210 degrees. As a result of both processes a substance is absorbed into the yarn, and finally both processes result in a change in the absorption of light characteristics of the yarn. There are differences too, as there are differences between dyeing to any two different colors. White yarn is dried at a lower temperature to avoid unwanted yellowing. Darker colored yarns remain in the dye bath longer. Some colors are obtained by mixing dyes. Only white and brilliant colored yarns like flame are bleached first. In dyeing yarns to other than white differing amounts of leveling agents are used. Also, application of optical brighteners causes absorption of light in the ultraviolet region of the spectrum, while application of conventional dyes causes absorption of light in the visible region.

Weighing these similarities and differences, we conclude that the similarities are more significant. The essence of dyeing seems to be the absorption into the yarn of a substance which changes the light-absorption characteristics of the yarn. This occurs when yarn is treated with Uvitex. The differences are minor in comparison. Therefore, we hold that treatment of yarn with Uvitex constitutes dyeing. Since dyeing is one of the exemplar processes associated with the phrase "in which color is imparted," treatment of yarn with Uvitex must constitute a process "in which color is imparted" within the meaning of that phrase in TSUS Schedule 3, headnote 2(b).

We find no support for the Customs Court's conclusion, that Congress did not contemplate, by using the phrase "in which color is imparted," a color change brought about by the removal of color. Every color change can be said to consist of a removal

of one color and an addition of another. While the Government's experts testified that treatment of yarn with Uvitex removed yellow, it would be just as accurate to say that treatment of yarn with Uvitex added white. While we agree with the Customs Court that the exemplar processes all involve the application or addition of pigment or other colorant, we note that in treatment of yarn with Uvitex, the acidic medium and raised temperature cause the Uvitex to be absorbed into the yarn in the same manner as in dyeing to any other color. Thus, treatment with Uvitex constitutes addition of a colorant.

■ This brings us to the Customs Court's holding that white is not a color. The expert witnesses and lexicographic authority relied on below define white as the absence of color. Nevertheless, it is common practice to use the term "white" to describe the color of something, e. g., the residence of the President of the United States. Although *Webster's Third International Dictionary* defines "white" in definition 1a as "free from color", in definition 1b(1) it defines it as "of a color like that of new snow or clean milk: having the color of good bond paper or the traditional lily: *specif.*: of the color white". This issue reminds us of the old, familiar metaphysical puzzles to which there are no answers, e. g., If nobody hears a tree fall in the forest, does it make a sound? Fortunately for us, however, our job is not to solve riddles. Rather, our task is simply to interpret the statute in such a manner as to effectuate the will of Congress.

In that regard, we note that the duty-free provision of TSUS item 307.60 has its origin in Public Law 85–284, which added paragraph 1822 to the Free List of the Tariff Act of 1930. The genesis of this legislation was the desire to provide disabled people with the materials that were required for making hooked rugs at as low a cost as possible, because of the therapeutic value of rug making. See 103 Cong.Rec. 16,768 (1957).[7] The object designed to be

7. The change in terminology from "dyed" under paragraph 1822 of the Tariff Act of 1930 to

"colored" in item 307.60 TSUS does not indicate a change in Congressional motivation for

reached by an Act must limit and control the literal import of the terms and phrases employed. *Church of Holy Trinity v. United States*, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892). Since it is just as therapeutic to hook rugs with white yarn as it is with any other color yarn, we conclude that Congress must have intended white to be considered a color for purposes of applying TSUS item 307.60.

Accordingly, for the reasons set forth herein, the judgment of the Customs Court is *reversed.*

making this item duty free. Rather, it reflects a desire to make the Tariff Schedules more precise by eliminating the indiscriminate use of terms such as "colored", "dyed", "printed", and "stained". See *Tariff Classification Study,* Explanatory Notes to Schedule 3 at page 5 (1960).