**HEWLETT–PACKARD COMPANY,**
Plaintiff–Appellee,

v.

**UNITED STATES, Defendant–**
**Appellant.**

No. 98–1537.

United States Court of Appeals,
Federal Circuit.

Aug. 25, 1999.

William D. Outman, II, Baker & McKenzie, Washington, DC, argued for plaintiff-appellee. With him on the brief were Teresa A. Gleason and Michael E. Murphy.

Bruce N. Stratvert, Attorney, Civil Division, Commercial Litigation Branch, International Trade Field Office, Department of Justice, New York, New York, argued for defendant-appellant. With him on the brief were David W. Ogden, Acting Assistant Attorney General, and David M. Cohen, Director, Civil Division, Commercial Litigation Branch, Department of Justice, Washington, DC; and Joseph I. Liebman, Attorney in Charge, International Trade Field Office. Of counsel on the brief was Sheryl A. French, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, New York, New York.

Before MICHEL, PLAGER, and RADER, Circuit Judges.

RADER, Circuit Judge.

The United States Court of International Trade ordered the United States Customs Service to reclassify certain small-format, desktop pen plotters imported by the Hewlett–Packard Company (HP) as other automatic data processing machine printer units under subheading 8471.92.65 of the Harmonized Tariff Schedule of the United States (HTSUS).[1] For the reasons set forth below, this court affirms.

## I.

At issue are four models of HP's desktop pen plotters (model nos. 7440A, 7475A, 7550A, and 7550B). These plotters produce detailed business-related graphics, such as charts, graphs, or diagrams. Specifically, the plotters create graphics as directed by software installed on a computer. The computer transfers data to the plotter through a cable. The plotter has pens and paper that move along x and y-axes. To produce the graphic, the plotter moves the pens and paper according to the data from the computer.

Customs classified the plotters under subheading 9017.20.80, which carries a duty rate of 5.8% *ad valorem:*

> 9017 *Drawing,* marking-out or mathematical calculating *instruments* (for example, drafting machines, pantographs, protractors, drawing sets, slide rules, disc calculators); instruments for measuring length, for use in the hand (for example, measuring rods and tapes, micrometers, calipers), not specified or included elsewhere in this chapter; parts and accessories thereof:
>
> 9017.20 *Other drawing,* marking-out or mathematical calculating *instruments:*
>
> 9017.20.80 *Other:*

HP appealed to the Court of International Trade, arguing that Customs should have classified the goods under subheading 8471.92.90, dutiable at a rate of 3.7% *ad*

---

**1.** References to the HTSUS throughout this    opinion are to the 1991 version.

*valorem.* After a two-day trial, the trial court agreed with HP that Customs should have classified the goods under heading 8471, but applied a different subheading—8471.92.65. That subheading, like the one advanced by HP, carries a 3.7% duty rate:

> 8471 *Automatic data processing machines and units thereof;* magnetic or optical readers, machines for transcribing data onto data media in coded form and machines for processing such data, not elsewhere specified or included:
>
> *Other:*
>
> 8471.92 Input or *output units,* whether or not entered with the rest of a system and whether or not containing storage units in the same housing:
>
> *Other:*
>
> *Printer units:*
>
> 8471.92.65 *Assembled units incorporating at least the media transport, control and print mechanisms:*

In making its determination, the Court of International Trade relied principally on two of its prior cases: *Sumitronics, Inc. v. United States,* 19 C.I.T. 122 (1995) and *Apple Computer, Inc. v. United States,* 14 C.I.T. 77 (1990). The *Sumitronics* and *Apple Computer* courts decided that x-y plotters similar to the plotters at issue (or parts thereof) did not qualify as "drafting and drawing machines" under the predecessor to tariff provision 9017.20.80 in the Tariff Schedule of the United States (TSUS). Because the HTSUS made minimal changes in the TSUS, the trial court rejected Customs' classification under heading 9017 and relied on the prior cases. The court then proceeded to determine that HP's plotters satisfy the requirements for classification under heading 8471. It ultimately concluded that subheading 8471.92.65 (printer units) more specifically described the plotters than the subheading advanced by HP, 8471.92.90 (computer output devices). Apparently content with the trial court's choice, HP no longer advances subheading 8471.92.90 as the proper classification for its plotters. Accordingly, this court limits its review to the subheadings identified by Customs, 9017.20.80, and the trial court, 8471.92.65.

On appeal, the government contends that material changes in the tariff provision from the TSUS to the HTSUS bring the plotters within the scope of heading 9017. The government also argues that Note 5(B) to Chapter 84 precludes classification of the plotters under that Chapter.

## II.

■ Classification of goods entails a two-step process: (1) ascertaining the proper meaning of specific terms in the tariff provision; and (2) determining whether the merchandise in question comes within the description of the properly construed terms. *See Sports Graphics, Inc. v. United States,* 24 F.3d 1390, 1391 (Fed.Cir.1994). The first step is a question of law reviewed without deference by this court. *See Mead Corp. v. United States,* 185 F.3d 1304, 1306–08 (Fed.Cir. 1999). The second is a question of fact, reviewed for clear error. *See Universal Elecs., Inc. v. United States,* 112 F.3d 488, 491 (Fed.Cir.1997).

The General Rules of Interpretation (GRI) govern the classification of goods within the HTSUS. GRI 1 provides that the appropriate classification "shall be determined according to the terms of the headings and any relative section or chapter notes." Pertinent to this case, Chapter Note 1(m) to Section XVI, HTSUS, which includes Chapter 84, provides: "This section does not cover: Articles of chapter 90." Accordingly, as a predicate to determining if the trial court properly classified the goods under Chapter 84, this court must first determine whether they fall under Chapter 90.

### A. *Chapter 90*

■ As noted above, the Court of International Trade has twice confronted the

issue of whether plotters similar to those at issue (or parts thereof) fall under the predecessor provision to subheading 9017.20.80, namely, subheading 710.80, TSUS. That subheading read:

> 710 Drafting machines, compasses, dividers, ruling pens, lettering pens (including fountain-pen type) used by draftsmen, pantographs, drawing curves, rulers, scribers, straight edges, disc calculators, slide rules, and other instruments, all the foregoing which are drawing, marking-out or mathematical calculating instruments; hand styluses; micrometers, calipers, gauges, balancing machines, and non-optical measuring or checking instruments, apparatus, and machines not specially provided for; and parts of the foregoing articles:
>
> 710.80 Other: Drafting and drawing machines, instruments, and apparatus, and parts thereof.

In *Apple Computer*, the Court of International Trade construed heading 710 under the doctrine of *noscitur a sociis*. That doctrine sets the meaning of a word by associating it with the terms accompanying it. *See Indian Head, Inc. v. United States*, 66 C.C.P.A. 68, 597 F.2d 266, 268 (1979). According to this doctrine, the Court of International Trade noted that heading 710 contains terms such as compasses, dividers, ruling pens, etc.—items used to create designs. The court thus interpreted "drafting and drawing machines" to cover only items used in the creation of designs. The Apple plotter, in contrast, did not "assist in the creation of hand drawn designs," but rather served "as a printer for designs created by the designer on a computer." *Apple Computer*, 14 C.I.T. at 86. The *Sumitronics* court used similar reasoning to reject classification of writing heads used in plotters as other parts of drawing machines under 710.80. *See Sumitronics, Inc. v. United States*, 19 C.I.T. at 124 ("Neither the *Apple Computer* plotter nor the CES plotter assist in the design or creation of the drawings themselves, rather, they merely

assist in the recording and writing of what was created on a data processing machine.").

█ Where the text of a tariff provision has undergone only minor changes from the TSUS to the HTSUS, the high values of uniformity and predictability—not to mention the merits of honoring Congress' decision to retain prior policy—counsel courts to credit prior decisions interpreting the TSUS provision. *See, e.g., Pima Western, Inc. v. United States*, 20 C.I.T. 110, 915 F.Supp. 399, 404–05 (1996) (" '[O]n a case-by-case basis prior decisions should be considered instructive in interpreting the HTS[US], particularly where the nomenclature previously interpreted in those decisions remains unchanged and no dissimilar interpretation is required by the text of the HTS[US].' ") (quoting the Conference Report on the Omnibus Trade Act of 1988, H.R. Conf. Rep. No. 576, 100th Cong., 2d Sess. 515, 549–50 (1988)). This court agrees with the trial court that the relevant language of subheading 9017.20.80 changed insubstantially from the language under the prior TSUS provision, 710.80. Heading 710, for example, first lists specific articles (e.g., drafting machines, pantographs, and slide rules), and then concludes with a general category, noting that "all of the foregoing which are drawing, marking-out or mathematical calculating instruments." Heading 9017 begins with the general category of "drawing, marking-out or mathematical calculating instruments," and then includes in a parenthetical specific items falling within that category. This change in organization, rather than substance, does not merit reconsideration of settled classification issues.

In the present case, the parties do not dispute that users do not use HP's plotters to create designs. Rather, specialized software creates and outputs the designs to the plotters, which merely produce a hard copy. In that respect, the plotters at issue are no different than those at issue in *Apple Computer*. Accordingly, the rea-

**1350**

soning of *Apple Computer* and *Sumitronics* applies equally in this case. Because the plotters at issue do not create drawings, they do not fall under heading 9017.

### B. *Chapter 84*

■ The conclusion that the subject plotters are not properly classified in Chapter 90 does not automatically compel classification under Chapter 84. This court must first determine whether Note 5(B) to Chapter 84 precludes classification under that Chapter. That Note reads, in pertinent part:

> Heading 8471 does not cover machines incorporating or *working in conjunction with an automatic data processing machine and performing a specific function.* Such machines are classified in the heading appropriate to their respective functions or, failing that, in residual headings.

Thus, if these plotters both work in conjunction with an automatic data processing machine and perform a specific function, they cannot be classified in heading 8471.

■ The analysis of whether the subject plotters work in conjunction with an automatic data processing machine begins with the definition of such a machine. While not legally binding, the Explanatory Notes generally indicate the proper interpretation of the HTSUS. *See Lynteq, Inc. v. United States*, 976 F.2d 693, 699 (Fed.Cir. 1992). The Explanatory Notes to heading 8471 enumerate the units of an automatic data processing machine:

> A complete digital data processing system must comprise, at least:
> (1) A central processing unit....
> (2) An input unit....
> (3) An output unit which converts the signals provided by the machine into an intelligible form (printed text, graphs, displays, etc.) or into coded data for further use (processing control, etc.).

Heading 8471 Explanatory Notes at 1298. The parties do not dispute that the plotters qualify as a "unit," as defined in Note 5(B)**[GB 4]**. The plotters also qualify as "output" units. As a factual matter, the trial court determined that the plotters convert signals provided by a computer into printed form. The trial court also determined that the plotters have no use other than as part of a computer system. These findings, free from clear error, place the plotters squarely within the definition of an "output unit." As such, they do not "work in conjunction with an automatic data processing machine," but rather are part of such a machine. *See Shenk & Co. v. United States*, 960 F.Supp. 363, 366 (CIT 1997) (contrasting, for purposes of Note 5(B), devices that are designed as "part of" automatic data processing systems with those that "work in conjunction" with such systems). Accordingly, the subject plotters do not trigger the Note 5(B) exclusion. Because this court has determined that the plotters do not work in conjunction with an automatic data processing unit, it need not address whether the plotters perform a "specific function."

To avoid classification under Chapter 84, the government focused its arguments principally on Chapter Note 1(m) to Section XVI and Note 5(B) to Chapter 84. As discussed above, these arguments fail. This court has also considered the government's remaining arguments, but finds them unpersuasive. Accordingly, this court affirms the judgment of the Court of International Trade. The plotters are properly classified under 8471.92.65.

### COSTS

Each party shall bear its own costs.

*AFFIRMED.*